UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| GERARD PAUL BROPHY, | * | |
|  | * | |
| Plaintiff, | * | |
|  | * | |
| v. | * | |
|  | * | Civil Action No. 25-cv-10269-ADB |
|  | * | |
| WEYMOUTH POLICE DEPARTMENT | * | |
| OFFICER STEPHEN GOSLIN and | * | |
| JUSTIN CHAPPELL, | * | |
|  | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Gerard Brophy ("Plaintiff") brings civil-rights and torts claims against Weymouth Police Department ("WPD") Officer Stephen Goslin, and Justin Chappell, a former member of the WPD (together "Defendants"), based on his October 27, 2019 arrest and subsequent prosecution. Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 7]. For the following reasons, Defendants' motion is **GRANTED**.

I.     **BACKGROUND**

    A.     **Factual Background**

The following facts are taken from Plaintiff's Complaint. For the purposes of this motion, the Court "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." Lawrence Gen. Hosp. v. Cont'l Cas.

Co., 90 F.4th 593, 598 (1st Cir. 2024) (quoting Lanza v. Fin. Indus. Regul. Auth., 953 F.3d 159, 162 (1st Cir. 2020)).

On October 27, 2019, at approximately 5:15 AM, Plaintiff and another individual were seated in a parked Ford Explorer in the parking lot of a 7-Eleven gas station in Weymouth, Massachusetts. [ECF No. 1 ("Complaint" or "Compl.") ¶ 9]. Chappell, who was a WPD officer at the time, was dispatched to investigate Plaintiff and the other individual for "suspicious activity." [Id. ¶¶ 2, 10]. Chappell parked his WPD vehicle behind Plaintiff's Ford Explorer such that the Ford Explorer could not exit the parking lot without hitting the WPD vehicle. [Id. ¶ 11]. Chappell then approached the driver's side of the Ford Explorer, where Plaintiff was seated. [Id. ¶ 12]. Goslin arrived on the scene a short time later, and Defendants asked Plaintiff questions and requested his identification and identifying information.[1] [Id. ¶¶ 13–14]. Plaintiff refused to provide his identification or other identifying information. [Id. ¶ 15]. After some discussion about whether Plaintiff was required to provide identification or identifying information, [id. ¶ 16], Goslin opened the driver's side door and ordered Plaintiff to get out of the car. [Id. ¶ 17]. Plaintiff refused to get out and attempted to close the driver's side door, at which point, Goslin grabbed Plaintiff's arm, preventing Plaintiff from closing the door. [Id. ¶¶ 18–19]. Goslin then accused Plaintiff of touching him and of being aggressive, and reiterated his demand that Plaintiff get out of the car, stating that Plaintiff would otherwise be forcefully removed. [Id. ¶¶ 19–20]. Plaintiff then got out on his own, and Defendants placed him in handcuffs. [Id. ¶ 21].

Plaintiff was charged with assault and battery on a police officer (the "assault and battery charge") and with failure to provide identification as an operator of a motor vehicle (the "failure-

---

[1] The Court notes that it is unclear from the pleadings what other identifying information Defendants requested from Plaintiff.

to-identify charge"). [Compl. ¶ 22].  He was arraigned in Quincy District Court on October 28, 2019.  [Id. ¶ 24].  The failure-to-identify charge was dismissed on February 3, 2022, and after a period of pretrial probation, the assault and battery charge was dismissed on February 8, 2023.  [Id. ¶¶ 25–26].

### B. Procedural History

Plaintiff filed the instant complaint on February 3, 2025.  [Compl.].  Defendants filed a motion to dismiss, [ECF No. 7], which Plaintiff opposed, [ECF No. 11].

## II. LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor."  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)).  A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Maddox, 732 F.3d at 80 (quoting Fed. R. Civ. P. 8(a)(2)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Instead, "the complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'"  Maddox, 732 F.3d at 80 (quoting Twombly, 550 U.S. at 570).

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Iqbal, 556 U.S. at 678).  "The plausibility standard invites a two-step pavane."  Maddox, 732 F.3d at 80 (citation omitted).  First, courts "must separate the complaint's

factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Second, "the court must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).  "Conducting a plausibility inquiry is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).

**III.    DISCUSSION**

Plaintiff's Complaint contains eighteen counts.  In his opposition to Defendants' motion to dismiss, Plaintiff agrees that Counts 2, 4, 5, 6, 7, 8, 9, 10, 14, 15, 16, 17, and 18 should be dismissed.  [ECF No. 11 at 1].  Accordingly, Counts 2, 4, 5, 6, 7, 8, 9, 10, 14, 15, 16, 17, and 18 are dismissed, and the Court will address only Count 1 (Fourth Amendment), Count 3 (First Amendment), Count 11 (common law malicious prosecution), Count 12 (42 U.S.C. § 1983 malicious prosecution), and Count 13 (Massachusetts Civil Rights Act ("MCRA") malicious prosecution).

**A.    Statute of Limitations**

Defendants argue that all of Plaintiff's claims, including Counts 1, 3, 11, 12, and 13, are barred by the statute of limitations.  [ECF No. 8 at 6–7].  The parties agree that all of Plaintiff's remaining claims have a three-year statute of limitations, [id.]; [ECF No. 11 at 8]; see also Bettencourt v. Town of Mendon, 334 F. Supp. 3d 468, 483 (D. Mass. 2018) ("'For section 1983

4

actions, a federal court applies the forum state's limitation period governing personal injury actions. Massachusetts has a three-year statute of limitations for personal injury actions,' pursuant to Mass. Gen. Laws ch. 260, § 2A.") (quoting Coll. Hill. Props., LLC v. City of Worcester, 135 F. Supp. 3d 10, 14 (D. Mass. 2015)); Arias v. City of Everett, No. 19-cv-10537, 2019 WL 6528894, at *13 (D. Mass. Dec. 4, 2019) ("It is well established that the limitations period for an MCRA claim is three years."); however, they disagree as to when the statute of limitations began to accrue on Plaintiff's claims.

### 1.     Malicious Prosecution (Counts 11, 12, 13)

Plaintiff asserts malicious prosecution claims against Defendants under the common law (Count 11), § 1983 (Count 12), and the MCRA (Count 13). Claims for malicious prosecution under common law, § 1983, and the MCRA are similar in that they each accrue when the underlying criminal action terminates. See Wilson v. Town of Fairhaven, No. 18-cv-11099, 2019 WL 1757780, at *13 (D. Mass. Mar. 4, 2019), report and recommendation adopted, No. 18-cv-11099, 2019 WL 1760591 (D. Mass. Mar. 19, 2019); see also Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (finding that a § 1983 malicious prosecution claim "does not accrue until the termination of the criminal proceedings"); Billings v. Com. Ins. Co., 936 N.E.2d 408, 412 (Mass. 2010) (stating that "termination of the underlying action . . . starts the clock on the statute of limitations" for a common law malicious prosecution claim). Here, Plaintiff brought his suit within three years of the dismissal of both his failure-to-identify charge and his assault and battery charge, [Compl. ¶¶ 25–26], and as such, his malicious prosecution claims are not time-barred.

### 2.    False Arrest (Count 1)

As to his Fourth and First Amendment claims brought pursuant to 42 U.S.C. § 1983 (Counts 1 and 3, respectively), Plaintiff argues that these also began to accrue upon the termination of his criminal charges. [ECF No. 11 at 8–12]. In general, for § 1983 claims, accrual "is a question of federal law," which "conform[s] in general to common-law tort principles." McDonough v. Smith, 588 U.S. 109, 115 (2019) (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)). A claim accrues at the time at which the plaintiff has a "complete and present cause of action," and to determine when that has occurred, the Court looks to the nature of the alleged constitutional violation. Id. (quoting Wallace, 549 U.S. at 388).

In his Complaint, Plaintiff's first claim under the Fourth Amendment (Count 1) alleges only that "[a]s a result of Defendants' actions, Mr. Brophy was denied his rights as guaranteed under the Fourth Amendment." [Compl. ¶ 29]. The conclusory nature of this claim, which does not specify what conduct allegedly violated Plaintiff's Fourth Amendment rights, or how, could justify its dismissal. See, e.g., Cline v. Burke, 682 F. Supp. 3d 125, 133 (D. Mass. 2023) (dismissing Fourth Amendment claim that failed to explain how the plaintiff's rights were violated), aff'd, No. 23-cv-01680, 2024 WL 5412394 (1st Cir. Oct. 16, 2024). Reviewing Plaintiff's Fourth Amendment claim in light of the remainder of the Complaint, however, the Court construes it as a false arrest claim based on the alleged absence of probable cause for Plaintiff's arrest.[2]

---

[2] The Court notes that Plaintiff's Complaint included a separate, but similarly vague, claim of false arrest under § 1983 (Count 9), [Compl. ¶ 66 ("Defendants imposed by force and/or threat an unlawful restraint on Mr. Brophy's freedom of movement")], which Plaintiff agrees should be dismissed, [ECF No. 11 at 1].

The statute of limitations for a false arrest claim brought under § 1983 begins to accrue when an individual "is bound over by a magistrate or arraigned on charges." Wallace, 549 U.S. at 389, 397 ("We hold that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); see also Aprileo v. Clapprood, 158 F.4th 317, 322 (1st Cir. 2025) (rejecting the theory that false arrest claims do not accrue until an underlying conviction is invalidated); Arias, 2019 WL 6528894, at *11 n.12 ("The accrual date for § 1983 and MCRA false arrest claims is generally the date of the arrest or indictment."). "Favorable termination of the proceedings is not an element of the false arrest claim," Arias, 2019 WL 6528894, at *11 n.12, which "has a life independent of an ongoing trial or putative future conviction—it attacks the arrest only to the extent it was without legal process, even if legal process later commences," making it analogous to a common-law false imprisonment claim, McDonough, 588 U.S. at 122 (citing Wallace, 549 U.S. at 389–90). Unlike a false evidence claim, which was determined in McDonough to be closely aligned with a malicious prosecution claim, a false arrest claim does not directly challenge or impugn the result of the prosecution. Id. at 116, 122–23; see also Harrington v. City of Nashua, 610 F.3d 24, 28–29 (1st Cir. 2010) ("[W]hen a plaintiff's claim arises out of 'detention without legal process,' the tort of false imprisonment provides the appropriate analogy from which to ascertain the accrual date.") (emphasis in original). Accordingly, Plaintiff's § 1983 false arrest claim began to accrue, at the latest, on October 28, 2019, when he was arraigned, [Compl. ¶ 24], and was therefore not filed within the three-year statute of limitations.

Plaintiff also argues that equitable tolling should apply to his false arrest claim. [ECF No. 11 at 11–12]. While it remains an open question in the First Circuit "whether the equitable

7

tolling of § 1983 actions is governed by state or federal law," Martin v. Somerset Cnty., 86 F.4th 938, 944–45 (1st Cir. 2023), under both federal and Massachusetts law "equitable tolling is a rare exception, not the rule," Sosa v. Mass. Dep't of Corr., 728 F. Supp. 3d 187, 199 (D. Mass. 2024); Almeida v. Duclos, No. 20-cv-10142, 2021 WL 3706849, at *2 (D. Mass. July 15, 2021) (finding that equitable tolling was not appropriate for plaintiff's false arrest claim because "[n]othing prevented him from discovering the factual basis of his claim earlier").  Further, a criminal defendant is not "absolved from all other responsibilities that the law would otherwise place upon him" during the pendency of his criminal proceedings.  Wallace, 549 U.S. at 396 (finding concern that a "petitioner would have had to divide his attention between criminal and civil cases" not an appropriate justification for equitable tolling); see also Shrum v. Cooke, 60 F.4th 1304, 1309 (10th Cir. 2023) (finding that requiring plaintiff to bring his § 1983 suit during the pendency of his criminal trial was not extraordinary or unusual).  Other courts have found that even imprisonment does not constitute an extraordinary circumstance sufficient to warrant equitable tolling for a false arrest or unlawful arrest claim, and Plaintiff has alleged no other, more unique circumstances indicating that equitable tolling is warranted here.  Acosta v. Toledo, 571 F. Supp. 2d 316, 320–21 (D.P.R. 2008) (holding that plaintiff's false arrest claim was time-barred because it began accruing at the start of the legal process); Mathis v. Vizcarrondo, 792 Fed. App'x 746, 747 (11th Cir. 2019) (holding that equitable tolling did not apply where plaintiff was not prevented from filing his claims while incarcerated).  Because Plaintiff's § 1983 false arrest claim is time-barred and the doctrine of equitable tolling is not available, Count 1 is **DISMISSED**.

### 3.     Retaliatory Arrest (Count 3)

For the same reasons, Plaintiff's First Amendment retaliatory arrest claim is also time-barred and not subject to equitable tolling.  As with a false arrest claim, all of the necessary elements of a retaliatory arrest claim exist at the time of the arrest, and the statute of limitations principles in Wallace are similarly applicable.  See Starkey v. Birritteri, No. 12-cv-10988, 2012 WL 5921044, at *2 (D. Mass. Nov. 27, 2012) ("[A]ny § 1983 claim for false arrest, retaliatory arrest, or false imprisonment accrued when [plaintiff] was arraigned and released.") (citing Harrington, 610 F.3d at 28–30); see Wesbrock v. Ledford, 464 F. Supp. 3d 1094, 1098–99 (D. Ariz. 2020) (holding that plaintiff's retaliatory arrest claim began to accrue at the time of his arrest); Gutierrez v. Rodriguez, No. 14-cv-00567, 2015 WL 13590154, at *3 (D.N.M. May 22, 2015) (finding that plaintiff's cause of action for retaliatory arrest accrued when he was charged in court), aff'd, 703 F. App'x 677 (10th Cir. 2017); Samuelson v. Jewell Sch. Dist. 8, 725 F. Supp. 3d 1195, 1218 n.21 (D. Or. 2024) ("[A] § 1983 claim for retaliatory arrest . . . may be barred by the two-year statute of limitations.") (citing Wallace, 549 U.S. at 391).  Accordingly, Plaintiff's retaliatory arrest claim is also time-barred, and Count 3 is **DISMISSED**.

### B.     Malicious Prosecution Claims (Counts 11, 12, 13)

In all three of Plaintiff's malicious prosecution claims, he alleges that Defendants "commenced and continued a criminal proceeding" against him without probable cause. [Compl. ¶¶ 69–82].  In connection with the common law claim (Count 11), he also contends that Defendants acted with "actual malice."  [Id. ¶ 73].

### 1.     Malicious Prosecution under Section 1983 (Count 12)

To succeed on a § 1983 claim for malicious prosecution, a plaintiff must establish that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by

9

probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir. 2013) (quoting Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012)). For his § 1983 claims, Plaintiff must, therefore, "do more than merely satisfy the elements of the common law tort of malicious prosecution." Watson v. Mita, 396 F. Supp. 3d 220, 224 (D. Mass. 2019). He must also "show a deprivation of liberty, pursuant to legal process, that is consistent with the concept of a Fourth Amendment seizure." Id. (quoting Harrington, 610 F.3d at 30); Degree v. Gendreau, No. 24-cv-10686, 2025 WL 3702535, at *9–10 (D. Mass. Dec. 19, 2025) (holding that plaintiff had not alleged a Fourth Amendment seizure pursuant to legal process necessary to plead a § 1983 malicious prosecution claim). "Generally, the offending legal process comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure)." Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001); see also Hernandez-Cuevas, 723 F.3d at 100 n.9 ("The moment a defendant becomes held pursuant to legal process differs depending on whether or not the defendant was arrested pursuant to a warrant."). Where a plaintiff is "arrested without a warrant . . . their arrest[]—which antedated any legal process—cannot be part of the Fourth Amendment seizure upon which they base their section 1983 claims." Nieves, 241 F.3d at 54. In such cases, the plaintiff "is detained without process until, 'for example, he is bound over by a magistrate or arraigned on charges.'" Hernandez-Cuevas, 723 F.3d at 100 n.9 (quoting Wallace, 549 U.S. at 389). As a result, Plaintiff must show "some post-arraignment deprivation of liberty that amounts to a Fourth Amendment seizure," such as being "detained after the initiation of the criminal charge, forced to post a pecuniary bond, subjected to travel restrictions, or otherwise burdened with any significant deprivation of liberty." Harrington, 610 F.3d at 32. "'[R]un-of-

the-mill conditions of pretrial release' do not fall 'comfortably within the recognized parameters of' a seizure." Wilson v. Fairhaven, No. 18-cv-11099, 2021 WL 1387778, at *21–22 (D. Mass. Mar. 8, 2021) (quoting Harrington, 610 F.3d at 32).

Here, Plaintiff alleges that Defendants had no probable cause for his arrest and prosecution, but he makes no mention of the requisite Fourth Amendment seizure pursuant to legal process. See [Compl. ¶¶ 74–77]. Because Defendants arrested Plaintiff without a warrant, [id. ¶¶ 9–26], his initial detention was not pursuant to legal process, Hernandez-Cuevas, 723 F.3d at 100 n.9. He was then arraigned, which provides the requisite legal process. [Compl. ¶ 24]. In his Complaint, however, although Plaintiff states that his assault and battery charge was dismissed after a period of pretrial probation, he does not provide any information as to what his pretrial probation entailed. [Id. ¶ 26]. More specifically, he does not argue that his probation conditions surpassed "run-of-the-mill conditions of pretrial release," Harrington, 610 F.3d at 32, or allege that his pretrial probation constituted a deprivation of liberty amounting to a Fourth Amendment seizure. Because Plaintiff has not alleged a Fourth Amendment seizure as required for a § 1983 malicious prosecution claim, Count 12 is **DISMISSED**.

    **2. Common Law and MCRA Malicious Prosecution (Counts 11, 13)**

Federal jurisdiction in this action rests on Plaintiff's § 1983 claims (Counts 1, 3, and 12), see 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."), all of which will be dismissed for the reasons explained above. Because there are no remaining federal claims, the Court needs to decide whether to exercise supplemental jurisdiction over the asserted state law

11

claims. A court may decline to exercise supplemental jurisdiction over a plaintiff's state law claims if:

>(1) the claim raises a novel or complex issue of State law,
>
>(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
>(3) the district court has dismissed all claims over which it has original jurisdiction, or
>
>(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)–(4); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties. . . . Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) ("[T]he balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.").

Here, all of Plaintiff's § 1983 claims over which the Court has original jurisdiction will be dismissed, and Plaintiff's remaining MCRA and common law malicious prosecution claims raise complex issues of Massachusetts law concerning favorable termination and qualified immunity.[3] Because of these considerations, and given that this case is at an early stage in the litigation, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state

---

[3] For example, although Defendants assert that they are entitled to qualified immunity, Massachusetts law is currently "unsettled regarding the existence of a state-law concept analogous to federal qualified immunity," as would apply to Plaintiff's state law malicious prosecution claims. Lachance v. Town of Charlton, 990 F.3d 14, 30 (1st Cir. 2021) (quoting Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010)).

law claims. Counts 11 and 13 are, therefore, **DISMISSED** without prejudice to whatever rights Plaintiff may have to pursue these claims in state court.

## IV. CONCLUSION

For the above reasons, Defendants' motion to dismiss, [ECF No. 7], is **GRANTED**, and Plaintiff's complaint is **DISMISSED** in its entirety.

**SO ORDERED.**

February 19, 2026                                   */s/ Allison D. Burroughs*
                                                                                                   ALLISON D. BURROUGHS
                                                                                                   U.S. DISTRICT JUDGE